FILED
2020 Mar-30 AM 11:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| MELLODY ANN BRADY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 5:18-cv-1615-LCB |
| | ) |
| COMMISSIONER SOCIAL | ) |
| SECURITY ANDMINISTRATION, | ) |
| AN INDEPENDENT AGENCY OF | ) |
| THE UNITED STATES OF | ) |
| AMERICA, | ) |
| | ) |
| Defendant. | |

## MEMORANDUM OPINION

On October 3, 2018, the Plaintiff, Mellody Ann Brady filed a complaint (Doc. 1) seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Commissioner filed an answer to the complaint on February 8, 2019. (Doc. 11). The Plaintiff filed a brief in support of her position on April 17, 2019, (Doc. 15), and the Commissioner filed a brief in support of the decision on May 15, 2019. (Doc. 16). The Plaintiff also filed a reply brief on May 27, 2019. (Doc. 17). Therefore, the Plaintiff's issues are ripe for review. For the following reasons, the final decision of the Commissioner is affirmed.

**I.    BACKGROUND**

1

The Plaintiff protectively filed for a period of disability and disability insurance benefits on August 14, 2014. (R. 10)[1]. She also applied for Supplemental Security Income. Her alleged onset date was ultimately amended to January 18, 2013. *Id*. The Plaintiff's claims for benefits were denied, and she subsequently filed a request for a hearing in front of an Administrative Law Judge ("ALJ"). The Plaintiff appeared before two different ALJ's[2] on separate occasions: first, in July of 2016, then in June of 2017. *Id*. The first ALJ determined that the Plaintiff needed to have a consultative examination. (R. 127-28). The Plaintiff testified at both hearings and was questioned by her attorney and the ALJs. A Vocational Expert ("VE") also testified at both hearings. The ALJ who presided over the second hearing issued an opinion on September 25, 2017. (R. 7-22). In issuing her opinion, the ALJ used the five-step evaluation process to determine whether an individual is disabled. The ALJ made the following determinations:

1. The Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2013. (R. 12)

2. The Plaintiff has not engaged in substantial gainful activity since January 18, 2013, the alleged onset date of disability. *Id*.

---

[1] Citations denoted "R" refer to the page numbers in the record attached to the Commissioner's answer at (Doc. 11).
[2] Only the ALJ from the second hearing, Judge Mallette Richey, made findings and issued a decision. Unless otherwise indicated, any references to an ALJ in this opinion will refer to Judge Richey, who presided over the hearing held on June 28, 2017, and issued a decision on September 25, 2017.

3. The Plaintiff has the following severe impairments: degenerative disc disease, fibromyalgia, chronic obstructive pulmonary disease (COPD), obesity, and an affective mood disorder. *Id.*

4. The Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 13).

5. The Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 CFR 404.1567(b) an 416.967(b). [3]

6. The Plaintiff can perform past relevant work as a cleaner[4]. Additionally, there are other jobs that exist in the national economy that the Plaintiff could perform including work as a marker, a cashier, or a sales attendant. (R. 21-22).

7. The Plaintiff has not been under a disability as defined in the Social Security Act, from January 18, 2013, through the date of the decision. (R. 22).

After the ALJ denied her claim, the Plaintiff requested an appeal to the Appeals Council, which was denied on August 7, 2018. (R. 1). At that point, the ALJ's decision became the final decision of the Commissioner. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). The Plaintiff then filed the present action.

## II. DISCUSSION

The Social Security Administration ("SSA") is authorized to pay Supplemental Security Insurance ("SSI") and disability insurance to claimants that

---

[3] The ALJ listed the Plaintiff's various limitations and abilities. (R. 15-16).
[4] This finding is further discussed below.

have a disability. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018). Title II of the Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at 1358-59, *citing* 42 U.S.C. §§ 423 (d)(1)(A).

### A. Standard of Review

The Court reviews "de novo the legal principles upon which the ALJ relied, but [is] limited to assessing whether the ALJ's resulting decision is supported by substantial evidence." *Henry*, 802 F.3d at 1266-67. "Substantial evidence is more than a scintilla and is such relevant evidence that a reasonable person would support its conclusion." *Winshel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Court does not "decide facts anew, mak[e] credibility determinations, or reweigh the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Court instead "must scrutinize the record as a whole in determining whether the ALJ reached a reasonable decision." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### B. Five Step Sequential Evaluation

To determine if a claimant has a disability, the SSA regulations mandate that an ALJ follow a five-step sequential evaluation while evaluating a disability claim.

4

*See* 20 C.F.R. §§ 404.1520; 416.920. Pursuant to the regulations, the ALJ must proceed with his or her analysis as follows:

1. Is the claimant engaged in substantial gainful activity? If "yes" the claimant is not disabled, and the analysis ends here. If the answer is "no," proceed to the next step of the analysis. 20 C.F.R. § 404.1520.

2. Does the claimant have a medically determinable physical or mental impairment or combination of impairments that meets the duration requirements of 20 C.F.R. § 404.1509? If "no," the claimant is not disabled. If "yes," proceed to the next step of the analysis. *Id.*

3. Does the claimant have an impairment that equals a listed impairment in 20 C.F.R. § 404, Subpart P Appendix 1 and meets the durational requirements of 20 C.F.R. § 404.1509? If "yes" the claimant is disabled. If "no," proceed to the next step of the analysis. *Id.*

4. Does the claimant have the residual functional capacity ("RFC") to return to past relevant work? If "yes" the claimant is not disabled. If no, proceed to the final step of the analysis. *Id.*

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If "no," the claimant is disabled. If "yes," the claimant is not disabled. *Id.*

Initially, the claimant bears the burden of proof regarding the first four steps of the above evaluation. *Washington,* 906 F.3d at 1359. The claimant carries a particularly heavy burden when showing why he or she cannot engage in past relevant work. *Id.* After the fourth step, the burden then shifts to the Commissioner to determine if there are jobs in the national economy that the claimant can perform. *Id.* However, while the burden shifts to the Commissioner at step five, the burden

ultimately falls to the claimant to show a disability exists. *Id.*, *citing Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001).

As noted above, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date, and that she had several severe impairments that met the durational requirements of 20 C.F.R. § 404.1509 and limited her ability to work. (R. 12). However, the ALJ found that the impairments, alone and in combination, did not equal a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 13-15). The ALJ then determined that the Plaintiff had the residual functional capacity ("RFC") to return to her past work. Finally, the ALJ found that, considering her RFC, age, education, and work experience, the Plaintiff could perform other jobs that exist in the national economy.

**C. The Plaintiff's Contentions**

The Plaintiff first argues that both the ALJ and the Appeals Council erred when they failed to resolve an alleged conflict in the record as to the Plaintiff's past relevant work. Second, the Plaintiff contends that the ALJ improperly rejected the consultative examiner's opinion that she was unable to work. Finally, the Plaintiff argues that the ALJ improperly applied 42 U.S.C. § 423(d)(5)(A). The Court will address each argument in turn.

**1. The ALJ and the Appeals Council failed to resolve an alleged conflict regarding the Plaintiff's past relevant work.**

According to the Plaintiff, the ALJ erred when she found that the Plaintiff could perform her past relevant work as a cleaner. The Plaintiff contends that there was a conflict in the record regarding her relevant work history. As noted, there were two separate hearings in this case, each presided over by a different ALJ. However, the ALJ from the first hearing did not make any findings nor did he issue a decision.

At the first hearing, the Plaintiff testified that, among other jobs, she cleaned apartments for a business called "Fountain Blue Management." She stated that job required her to lift no more than 10 to 15 pounds; that she was primarily standing on the job; and that she would carry things such as vacuum cleaners up and down stairs. The VE at that hearing determined that particular job to be that of a "housekeeper," defined in the Dictionary of Occupational Titles ("DOT") 381.687-014. According to the VE, the work as a housekeeper is considered "heavy."

At the second hearing, the Plaintiff described her work at the same company as "cleaning apartments" and stated that her work entailed "cleaning and vacuuming and shampooing the carpets and doing windows and stuff." (R. 39-40). The Plaintiff stated that this work included pushing a cart around and carrying equipment. (R. 40-41). The VE at this hearing classified that job as that of a "cleaner," defined at DOT 323.687-014. The VE stated that this work would be considered "light."

7

As noted, the ALJ found that the Plaintiff had the RFC to return to her past work as a cleaner. However, the Plaintiff argues, she has never worked as a cleaner. Rather, her past relevant work was as a housekeeper, a job with a different definition that is classified as heavy work and, therefore, outside of her RFC. According to the Plaintiff, this demonstrates that the ALJ's determination was not based on substantial evidence. In support of her contention, the Plaintiff cites *Washington v. Commissioner of Social Security*, 906 F.3d 1353 (11th Cir. 2018), in which the Eleventh Circuit held:

> [P]ursuant to the terms of the Ruling, and in light of the overall regulatory scheme that governs disability claims, the ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them. This duty requires more of the ALJ than simply asking the VE whether his testimony is consistent with the DOT. Once the conflict has been identified, the Ruling requires the ALJ to offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict. The failure to discharge this duty means that the ALJ's decision, when based on the contradicted VE testimony, is not supported by substantial evidence.

According to the Plaintiff, both the ALJ and the Appeals Council failed to resolve the above-mentioned conflict, and, therefore, this matter is due to be reversed.

However, this Court finds that any error in failing to resolve that conflict is harmless. Even if the ALJ erroneously determined that the Plaintiff had past relevant work experience as a cleaner, such a finding would be harmless, because the ALJ went on to make an alternative finding that the Plaintiff could perform other jobs as

well. At step five of her evaluation, the ALJ found that "there are other jobs existing in the national economy that [the Plaintiff] is able to perform." (R. 21). The ALJ found that someone the Plaintiff's age (at the time of her hearing), with the Plaintiff's RFC, and considering all of the Plaintiff's past work experience, could work as a marker, a cashier, or a sales attendant. Further, the ALJ found that there were a significant number of these types of jobs existing in the national economy at the time the decision was issued. The Plaintiff does not contest the ALJ's alternative findings regarding other jobs that she could perform.

"To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015), c*iting Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) (applying the harmless error doctrine in a Social Security appeal after finding that an administrative law judge made "erroneous statements of fact"). Because the ALJ ultimately determined that there were other jobs the Plaintiff could perform given her age, experience, and RFC, any failure to properly resolve the conflict as to the proper classification of her job with Fountain Blue Management was harmless. It would be a waste of scarce judicial resources to remand this case for the Appeals Council or the ALJ to resolve a conflict that would not change the outcome of the case. Accordingly, the Plaintiff is not entitled to relief on this issue.

## 2. The ALJ erred by giving little weight to the opinion Dr. Ekambaram.

Next, the Plaintiff argues that the ALJ erred in assigning little weight to the opinion of Dr. Ekambaram, the internal medicine physician who performed the consultative examination at the request of the first ALJ. Dr. Ekambaram examined the Plaintiff on October 6, 2016, and noted that she had a major depressive disorder, fibromyalgia, and arthritis in her upper neck and lower back. (R. 1387). On the last page of his report, Dr. Ekambaram stated: "In summary[,] patient has major depressive disorder. She has got fibromyalgia and pain. She cannot work continually due to the pain." (R. 1387). In her decision, the ALJ stated that she gave "little weight" to Dr. Ekambaram's opinion that the Plaintiff "cannot work continually due to the pain." (R. 20). According to the ALJ, Dr. Ekambaram examined the Plaintiff on a single occasion and was not her treating physician. The ALJ also noted that his opinion was not supported by the objective medical evidence in the record. *Id.*

The Plaintiff asserts that the first ALJ specifically chose an internal medicine specialist for the consultative exam, and contends that this "weighs against rejection" of Dr. Ekambaram's opinion. (Doc. 15, p. 12). In support of that contention, she cites 20 C.F.R. § 404.1519g(b) which provides, in part, that consultative examiners are chosen by the SSA because they "have the training and experience to perform the type of examination or test we will request." However, that section of the CFR

does not mandate or in any way suggest that special deference is to be given to a physician that is chosen by an ALJ to perform a consultative examination. The Plaintiff cites no other authority that would support the proposition that an ALJ must give any certain weight to a physician that he or she chose.

Additionally, the Plaintiff's allegation that the first ALJ "specifically chose" an internal medicine specialist is not supported by the record. A review of the transcript from the first hearing reveals that, after discussing the various medical problems that the Plaintiff had and the need for a consultative examination, the following exchange occurred:

> [ALJ]: Yeah. We've got a bunch of stuff allegedly going on here, so –
>
> [Plaintiff's Counsel]: And it's more of a combination of things I think that would – and so, I'm –
>
> [ALJ]: Okay. Internist?
>
> [Plaintiff's Counsel]: Yes. I would think so.
>
> [ALJ]: Okay. I'll deal with that then.

(R. 128). Therefore, the Plaintiff's assertion that "the original ALJ in this matter specifically chose a consultative examination by an internal medicine physician given the complete nature of the Plaintiff's problems" is not supported by the record. (Doc. 15, p. 11). At best, it was a collaborative choice.

The Plaintiff also argues that the ALJ should not have given less weight to Dr. Ekambaram's opinion simply because he examined her only once and was not her

treating physician. The Plaintiff cites 20 C.F.R. § 404.1527(c)(1), which provides: "Generally, we give more weight to the opinion of a source who examined you than to the opinion of a source who has not examined you." Again, that section of the CFR does not mandate any specific amount of weight that is to be given to an examining physician. The Plaintiff cites no other authority to support this contention.

Nevertheless, those were not the only reasons the ALJ gave for assigning little weight to Dr. Ekambaram's opinion. The ALJ also gave little weight to Dr. Ekambaram's opinion because, she said, "the objective medical evidence of record does not support the claimant's subjective complaints and/or allegations regarding the nature, duration, frequency, existence, or even severity of her medical contention." (R. 20). The Plaintiff disputes that finding as well and argues that her subjective complaints of disabling pain are supported her medical records.

In support of her argument, the Plaintiff points to several medical records which, she says, support her subjective complaints of disabling pain. She cites a clinical impression from January 18, 2013, of cervical radiculopathy (R. 609) and a CT Scan on January 18, 2013, finding "loss of disc space height at C6-C7." (R. 622). According to the Plaintiff, these two findings support Dr. Ekambaram's finding of limited neck mobility due to arthritis. The Plaintiff also cites to records

from other providers which similarly contain findings that would support Dr. Ekambaram's findings and opinion. *See* (Doc. 15, p. 13-16).

The Court has reviewed these records and agrees that they support Dr. Ekambaram's findings. However, that is not the standard to be applied in deciding whether to affirm or reverse the Commissioner's decision. Rather, the Court must determine whether the ALJ's decision is supported by substantial evidence. As noted above, "[s]ubstantial evidence is more than a scintilla and is such relevant evidence that a reasonable person would support its conclusion." *Winshel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

It is important to remember that the ALJ did not find that the Plaintiff had no medical impairments at all. Indeed, the ALJ found that the medical records supported a finding that the Plaintiff had several severe impairments that impacted her ability to work. This was taken into consideration in determining the Plaintiff's RFC. However, the ALJ found that these impairments were not as severe as the Plaintiff claimed. In reviewing the ALJ's decision, the Court does not "decide facts anew, mak[e] credibility determinations, or reweigh the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In her opinion, the ALJ highlighted numerous medical records suggesting that each of the Plaintiff's conditions were stable and not so severe as to prevent her from performing work consistent with her RFC. As to the Plaintiff's degenerative disc

disease, the ALJ cited an MRI scan and a CT scan both indicating that the Plaintiff had only "mild" degenerative changes in her discs. (R. 17). She cited records from Dr. James Bailey, a neurologist who found that she was "neurologically intact" and had normal reflexes and sensation and that she was able to walk without difficulty. (R. 17). The ALJ found these and other records to suggest that the Plaintiff's condition was stable and well controlled with medication.

As to the Plaintiff's fibromyalgia, the ALJ cited to records from Dr. Nuthi who found that she had "normal neurological findings, no edema in her extremities, and no indication of any tender trigger points." (R. 18). The ALJ also pointed to other records indicating that the Plaintiff did not have tender trigger points and that her pain was not reported to be widespread throughout all quadrants of her body. The records cited by the ALJ support her finding that, although the Plaintiff has these medical conditions, they are not as severe as the Plaintiff claims.

As to the COPD, the ALJ identified records indicating that auscultation of the Plaintiff's lungs was normal as were her chest x-rays. The ALJ also noted that the Plaintiff continued to smoke cigarettes after being advised to quit by multiple physicians. The ALJ similarly identified records from other providers regarding the Plaintiff's obesity and mood disorder which indicated the conditions were stable and not disabling. The Court notes that the Plaintiff does not appear to specifically challenge the ALJ's findings as to her obesity and mental impairment.

Accordingly, the record contains substantial evidence on which the ALJ could have based her finding that the Plaintiff's subjective complaints regarding the severity of her symptoms were not credible. The records cited by the Plaintiff certainly establish that she has medical conditions that would cause pain in her neck and back. However, those records standing alone do not support the Plaintiff's contention that her pain is so severe as to prevent her from engaging in any substantial gainful activity. The Court also notes that on at least one occasion, the Plaintiff was noted to have exhibited "drug seeking behavior." (R. 533). This lends further support to ALJ's determination.

Based on the foregoing, the Court finds that the record contains substantial evidence on which the ALJ could have based her decision to give little weight to Dr. Ekambaram's opinion. The medical records fully support the ALJ's determination that the Plaintiff's symptoms were less severe than she claimed and, therefore, were inconsistent with Dr. Ekambaram's opinion. The Court will not reweigh the evidence or make new credibility determinations as to this issue.

**3. The ALJ failed to properly apply 42 U.S.C. § 423(d)(5)(A).**

Finally, the Plaintiff claims that the ALJ failed to properly apply 42 U.S.C. § 423(d)(5)(A), which provides, in pertinent part:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain or other symptoms shall not alone be conclusive

15

> evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

According to the Plaintiff, The ALJ failed to articulate her reasons for finding that she was "not credible as to the intensity, severity and persistence of her symptoms from the objective medical cervical and lumbar medical conditions." (Doc. 15, p. 17), *citing Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987)("It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective testimony, then the Secretary, as a matter of law, has accepted that testimony as true. […] Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence. In this case, the Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.").

However, the Plaintiff does not actually argue that the ALJ failed to articulate reasons for her refusal to credit the Plaintiff's testimony. Rather, the Plaintiff simply

16

disagrees with the reasons given by the ALJ and argues that her findings were not supported by substantial evidence. The Court has already addressed this issue.

Similar to her argument in the previous section, the Plaintiff cites to many of the same records in which various doctors indicated she did indeed have certain conditions that could cause some of her symptoms. However, as noted above, the ALJ considered all of those records and in fact found that the Plaintiff did have limitations. The ALJ stated: "In summary, the evidence suggests that the claimant is limited, but she is able to perform the work of a light exertional level." (R. 20). Thus, the record does not suggest that the ALJ ignored the findings of these physicians. Rather, the ALJ considered their findings in conjunction with the entirety of the Plaintiff's medical records, determined that she had limitations, but that those limitations were not so severe as to render her unable to perform any type of work. As explained in the previous section, these findings are supported by substantial evidence, and it is not the province of this Court to reweigh the evidence or to make credibility determinations.

### III. Conclusion

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. A final order will be entered separately.

**DONE** and **ORDERED** March 30, 2020.

_/s/ Liles C. Burke_
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE